IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOAN ANNE DELONG | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ANDREW M. SAUL, Commissioner | : | |
| of Social Security | : | NO.  19-2392 |

## <u>MEMORANDUM</u>

**Padova, J.**                                                                    **September 29, 2020**

Plaintiff Joan Anne Delong brought this action seeking judicial review pursuant to 42

U.S.C. § 405(g) of the decision of the Commissioner of Social Security, Andrew M. Saul

("Commissioner"),[1] denying her claim for disability insurance benefits ("DIB") under Title II of

the Social Security Act.  After Plaintiff filed her Request for Review of the decision denying her

claim for DIB, we referred the matter to United States Magistrate Judge Carol Sandra Moore

Wells, who issued a Report and Recommendation ("R&R") recommending that Plaintiff's Request

be denied and that judgment be entered in favor of the Commissioner.  Plaintiff filed timely

objections to the R&R.  Because we find that there is more than a scintilla of evidence to support

the conclusions of the Administrative Law Judge ("ALJ") who denied Plaintiff's claim for DIB at

the administrative level, we overrule Plaintiff's objections and adopt the R&R in its entirety.

## I.       BACKGROUND

Plaintiff applied for DIB on September 10, 2015, alleging that she was disabled by the

following conditions:  chronic migraines, chronic neck and cervical pain with herniated discs, and

---

[1] On June 17, 2019, Andrew M. Saul was sworn in as the Commissioner of Social Security. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul has been substituted as the defendant in this case.

severe depression, with an onset date of August 18, 2015. (R.16, 169-70, 192.) The Social Security Administration denied her claim on January 20, 2016 and she requested a hearing before an ALJ. (R. 89-96.) The Hearing was held on January 5, 2018. (R. 32-50.) On April 11, 2018, the ALJ issued an unfavorable DIB decision. (R. 16-28.) On April 1, 2019, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final determination of the Social Security Commission. (R. 1-4.)

Plaintiff was born on January 22, 1970 and was 47 years old at the time of the administrative hearing. (R. 34, 68.) She has a high school diploma and some college credits. (R. 36.) She has past relevant work as a customer service representative, supervisor, and production technician. (R. 36-37.) Plaintiff lives with her husband and adult child. (R. 35.)

Plaintiff testified at the Hearing before the ALJ that she suffers from neck and back pain due to herniated discs, burning brain, fibromyalgia, chronic migraines, anxiety, panic attacks and severe depression. (R. 38.) Plaintiff maintains that these impairments interfere with her ability to sleep and that she does not engage in sports, hobbies, exercise, social activities, church, or housework. (R. 37-38.) She also claims that she suffers from 20 migraines a month. (R. 39.) She has described her migraines as lasting "[s]even days at a clip, and then [she'll] get maybe a day, and then they will start back up again. (Id.) She takes Frova for her migraines, alprazolam for anxiety, omeprazole for her stomach, and oxycodone for pain. (Id.) She does not take medication for her depression, because the medication would interfere with her migraine medication. (R. 39.) In response to her attorney, she testified that her pain is a 10 out of 10 during her migraines and it makes her feel as if her head will explode. (R. 40.) Sometimes she thinks that suicide would be her "only salvation." (Id.) Her herniated discs cause her hands to fall asleep and result in a weak

grip.  (R. 41.)  Plaintiff drops items when she feels a tingling and needling sensation and struggles to use zippers and buttons.  (Id.)

A Vocational Expert ("VE") testified during Plaintiff's Hearing that her past work as an assembler is categorized as unskilled/medium work and her other two prior jobs are categorized as skilled/sedentary.  (R. 45-46.)  The ALJ asked the VE to consider as a hypothetical an individual of Plaintiff's age, education and work experience who could lift 20 pounds, stand and walk six hours per eight-hour day, and sit for six or more hours through an eight-hour day, but had the following non-exertional limitations:  no detailed instructions and only occasional contact with the public.  (R. 46.)  The VE opined that Plaintiff could not do her past work based on these hypotheticals, but identified three light category jobs that she could perform:   1) housekeeper/cleaner (275,000 jobs nationally); 2) assembler of small products (125,000 jobs nationally), and 3) finish inspector (180,000 jobs nationally).  (R. 47.)  The VE testified that his opinion was consistent with the Dictionary of Occupational Titles.  (R. 47-48.)  Plaintiff's counsel asked the VE if a person with one of two additional limitations could perform those three jobs. The first additional limitation was only occasional ability to handle, finger, and feel bilaterally. (R. 48.)  The VE replied that such an individual could not perform unskilled light or sedentary work.  (Id.)  The second additional limitation was suffering from chronic migraines that would cause the individual to be off-task from job production for more than 15% of the work day.  (Id.) The VE responded that no employer would tolerate such activity and there would be no substantial gainful activity available.  (Id.)

The ALJ found that Plaintiff was insured under the Social Security Act through March 31, 2018; that she was 45 years old and thus a younger individual on August 18, 2105, the alleged onset date of her disability; that she had a high school education; and that she had not been engaged

in substantial gainful activity on the alleged onset date of her disabilities.  (R. 18, 26.)  The ALJ further found that Plaintiff "has the following severe impairments:  degenerative disc disease of the cervical spine, anxiety, migraines, and obesity," but that Plaintiff does not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1."  (R. 18-19.)  The ALJ also found that, while Plaintiff cannot perform her past relevant work, she has the residual functional capacity to perform light work with the following limitations:  "no detailed instructions and only occasional contact with the public."  (R. 21, 26.)   Based on the VE's testimony; Plaintiff's age, education, work experience; and Plaintiff's residual functional capacity; the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. 27.) The ALJ therefore concluded that Plaintiff was not "under a disability, as defined in the Social Security Act, from August 18, 2015 through the date of [the] decision."  (Id.)

After the Appeals Council denied Plaintiff's request for review of this decision, (R. 1.) Plaintiff filed the instant action.  Plaintiff argues that the Commissioner's final decision should be reversed for three reasons:  1) the ALJ erred in failing to follow 20 C.F.R. § 404.1529 and Social Security Rule ("SSR") 16-03p in evaluating the consistency of the evidence; 2) the ALJ posed a legally insufficient question to the VE and the VE's response regarding Plaintiff's residual capacity is therefore not supported by substantial evidence; and 3) the ALJ's decision is not supported by substantial evidence.  The Magistrate Judge recommends that we deny Plaintiff's Request for Review.  Specifically, the Magistrate Judge recommends that "[t]he ALJ did not commit reversible error when he evaluated Plaintiff's symptoms" and that "the hypothetical the ALJ posed to the VE was legally sufficient and supported by substantial evidence."  (R&R at 8.)  Plaintiff objects to both of these recommendations.

## II.      LEGAL STANDARD

We review de novo those portions of a Magistrate Judge's report and recommendation to which objections are made.  28 U.S.C. § 636(b)(1).  We "may accept, reject, or modify, in whole or in part, the [Magistrate Judge's] findings or recommendations."  Id.

We review the ALJ's decision to determine whether it is supported by substantial evidence on the record.  Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012) (citing 42 U.S.C. § 405(g); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).  Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938); and citing Dickinson v. Zurko, 527 U.S. 150, 153 (1999)).  The Supreme Court has explained that "the threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . is 'more a mere scintilla.'"  Id. (quoting Consol. Edison, 305 U.S. at 229; and citing Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs., 48 F.3d 114, 117 (3d Cir. 1995) (explaining that substantial evidence "is less than a preponderance of the evidence but more than a mere scintilla" (citation omitted)).  "'Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.'"  Hagans, 694 F.3d at 292 (quoting Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001)).  When we conduct our review, we "'are not permitted to reweigh the evidence or impose [our] own factual determinations.'"  Kushner v. Comm'r of Soc. Sec., 765 F. App'x 825, 828 (3d Cir. 2019) (alteration in original) (quoting Chandler v. Comm'r of Social Sec., 667 F.3d 356, 359 (3d Cir. 2011)).

III.    **DISCUSSION**

A.    <u>The ALJ's Evaluation of Plaintiff's Symptoms</u>

Plaintiff objects to the Magistrate Judge's recommendation that the ALJ's evaluation of her symptoms was supported by substantial evidence.  Specifically, Plaintiff maintains that the ALJ erred in his evaluation of the limitations caused by her migraine headaches and spinal-related pain and in disregarding her Reports and testimony concerning her pain, in violation of SSR 16-03p and 20 CFR § 404.1529.  <u>See</u> 20 C.F.R. § 404.1529 (stating that the ALJ will consider a claimant's statements about their symptoms, but noting that those statement alone are not sufficient to establish disability and that "[t]here must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence . . . would lead to a conclusion that you are disabled").  The ALJ found that "there is no objective evidence to indicate that [Plaintiff] is unable to function or has significantly reduced functioning during a [migraine] headache and that they occur with such frequency as to possibly equal listing 11.02 [the most relevant listed impairment]."  (R. 20.)  The ALJ also found that Plaintiff's spinal-related pain is not equal to the severity of a listed impairment because, while there is evidence that Plaintiff has spinal stenosis in the cervical region, she has no loss of strength in her lower extremities, there is no "evidence of nerve root compression accompanied by sensory or reflex loss," she has not been diagnosed with spinal arachnoiditis, and she can ambulate without assistance.  (<u>Id.</u> at 19-20.)  The ALJ also concluded that there is no objective medical evidence that Plaintiff's obesity and mental impairments are severe enough to be equal to a listed impairment, although he did note that her limitations due to her obesity and mental impairments were reflected in her residual functional capacity.  (R. 20.)

Plaintiff argues that the ALJ's findings rely on his inaccurate summary of her daily activities drawn from her Hearing testimony, her Function Report, and the Third Party Function Report completed by her husband.  As we summarized above, Plaintiff testified at the Hearing that she has migraines 20 times per month, that her migraines each last a week, and she only gets a day between migraines.  (R. 38-39.)  She also testified that it feels like her brain is on fire for nine to eleven days at a time, that she has neck pain that spreads down her spine, and that she has two discs out in her spine.  (R. 39-40.)  Plaintiff further testified that her hands fall asleep on a regular basis, causing weakness in her grip and, as a result, she drops things every day and can no longer write or sign her name.  (R. 41.)  She also testified that she drives, but not often, does not engage in sports or social activities, and does not attend church, visit friends, work in her garden, do housework, or shop for groceries.  (R. 37-38.)

Plaintiff describes her condition in her Function Report as follows:

> I have no quality of life.  I have pain every day, I can't sleep I can't work.  I can't do the simplest things.  I have severe depression every day, don't want to go anywhere, don't want to do anything, I'm aggravated [and] full of anxiety all the time. . . .  My neck [and] spine pain is so severe, I can't sleep or find a comfortable position [and] if I have a migraine, I must get out of bed completely, the pain is so bad, depression, anxiety.

(R. 200-01.)  Plaintiff further wrote in her Function Report that she doesn't like preparing and cooking food, that these activities cause her pain to increase, that she becomes agitated when she is asked about dinner, and that she just wants to be left alone.  (R. 202.)  She also noted that she is unable to do anything outdoors and that her husband and son do all of the chores, except for weekly or biweekly laundry, because of her pain and because it makes her angry to do the chores.  (R. 202.)  She does leave the house to shop for gifts and food when no one else is available to do it, which is three to four times a year.  (R. 203.)  Plaintiff also reported that she has "pain [and] depression all the time and [she has] no desire to engage in any activities."  (R. 204.)  Plaintiff

additionally asserted in her Function Report that she does not engage in social activities, has issues walking around her house, and her pain makes her feel "like I want to blow my brains out." (R. 205, 208.) Plaintiff also noted in the Function Report that she has trouble grasping objects, that she drops things a lot, and that she has trouble dressing and caring for her hair because of weakness in her arms. (R. 201, 204.)

Plaintiff's husband stated, in the Third Party Function Report, that Plaintiff "has no quality of life. She has pain all the time." (R. 214.) He elaborated that his wife "stays at home and ends up in bed most times with severe migrains [sic]" and noted that she also has "neck and spine pain" and does not sleep well. (R. 215.) However, he reported that his wife has no trouble with her personal care, feeds the pets, prepares meals (though he does most of the cooking), and does laundry once a week. (R. 215-16.) He also stated that his wife does not do any chores outside and that she rarely goes outside because of her frequent migraines, pain and depression. (R. 216-17.) He further reported that his wife shops for food and gifts. (R. 217.) He stated that his wife has trouble gripping and grasping objects because her hands fall asleep and that her depression, migraines and neck pain interfere with all of her activities. (R. 218-19.) He also reported that his wife has numerous migraines that last several days, as well as constant neck and spinal pain that have caused her to become depressed and to "voice concern over killing her self." (R. 221.)

The ALJ states in his opinion that he specifically considered that portion of Plaintiff's Hearing testimony in which she reported suffering from approximately 20 migraine headaches each month, as well a sleep issues, neck, spine and head pain, and weakness in her hands. (R. 22.) The ALJ determined that this testimony "was consistent with [Plaintiff's] function report where she indicated that she suffers from daily pain that is so severe she is unable to sleep or work," "that the weakness in her arms make[s] getting dressed and bathing difficult," that "[s]he is unable to

8

do outdoor chores and does laundry every two weeks," and that she has "difficulty concentrating, fatigue, and no desire to engage in social activities."  (Id. (citations omitted).)  The ALJ also specifically considered the portion of the Third Party Function Report prepared by Plaintiff's husband, in which he stated that Plaintiff "stays home and does not sleep well due to her constant pain and migraines," but also stated that Plaintiff is able to "do laundry once a week, feed pets, and watch television."  (Id.)  The ALJ also gave some weight to Plaintiff's husband's opinion that Plaintiff "has had suicidal thoughts because of the pain and suffers from constant depression." (Id.)  However, the ALJ also found that these Reports, and Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  (Id.)

In reaching this finding, the ALJ relied on Plaintiff's treatment records from St. Luke's Neurology Associates from December 9, 2016.  (R. 23, 399-404.)  The ALJ noted that, while Plaintiff rated her pain that day as a seven out of ten, "she was observed to be in no acute distress on examination." (R. 23, 403.)  Moreover, while Plaintiff "complained of memory problems, loss of vision and vertigo or dizziness, balance difficulties, difficulty walking, numbness and tingling, as well as twitching" her physical exam findings were normal, including her gait, stance, balance, reflexes, sensation and coordination.  (R. 23, 401, 403.)  The exam also showed that "her cranial nerve functioning was normal in all 12 cranial nerves."  (R. 23, 403.)  The ALJ also relied on Plaintiff's treatment records from St. Luke's Neurology Associates from December 30, 2016, April 27, 2017, and June 27, 2017, which showed that she was treated with Botox injections on those dates.  (R. 23, 387-98.)  These records show that in June 2017, Plaintiff no longer complained that she had difficulty walking, her self-reported pain level had decreased from 10/10 to 5/10, she was

9

in no acute distress, her physical exam findings were all normal and all 12 of her cranial nerves were functioning normally.  (R. 23, 388-391.)

The ALJ also considered the medical evidence regarding Plaintiff's complaints of neck and spine pain.  (R. 23.)  Those medical records included a September 2015 CT scan of Plaintiff's cervical spine, which showed mild degenerative changes, and a diagnosis of upper extremity weakness, cervicalgia, and spinal stenosis in the cervical region.  (R. 23, 557, 589.)  The ALJ further examined records from Plaintiff's pain management specialist, who reported treating her for neck pain in September 2015. (R. 23, 360-67.)  The records from that visit show that Plaintiff's "overall muscle tone was normal and strength was 5/5 bilateral in upper extremities . . . [she] had decreased pinprick and vibratory sensation at C5-C6 on the right . . . [her] gait was normal . . .[and] she experienced tenderness in the cervical spine and decreased cervical range of motion."  (R. 23, 362.)  The ALJ also relied on a report from Plaintiff's orthopedic specialist that, in June 2017, her "lateral impingement was positive and right shoulder strength had an external rotation at 0 degrees of abduction 4/5.  (R. 23, 493-95.)  Those records also showed that her "cervical spine and neck had normal active range of motion, normal extension, rotation, lateral flexion and no pain elicited by motion," that her "neck and spine had normal passive range of motion, extension, rotation, and lateral flexion;" and that "[s]he had a negative Spurling's test."  (R. 23-24, 494.)  The ALJ also considered the records from Plaintiff's October 2017 visit to her primary care physician, who opined that her mobility was limited by her morbid obesity.  (R. 24, 703-05.)

The ALJ also relied on the following evidence that Plaintiff failed to follow through with treatment of her mental impairment.  (R. 24.)  Plaintiff reported to her primary care physician in December 2015 that she had had three sessions with a counselor, who believed that she was bipolar, but had not seen a psychiatrist.  (R. 24, 534.)  Plaintiff was assessed at Summit View

10

Counseling in March 2016 and diagnosed with unspecified trauma/stress disorder but was discharged from therapy the following month for "non-compliance with goals and not returning her therapist's phone calls" and also showed that her therapist recommended that she participate in a partial hospitalization program, but Plaintiff had not followed through.  (R. 24, 381-85.) Plaintiff's records from her primary care physician also show that, in June 2017, she reported using Xanax for "chronic anxiety and that despite being previously diagnosed with bipolar she was not receiving any follow up treatment." (R.24, 482.)  The ALJ also considered evidence that Plaintiff went to the emergency room in July 2017 because she thought she was having a panic attack.  (R. 24; 413-434.)  The ALJ further relied on a psychiatric evaluation of Plaintiff performed on January 8, 2016, in which Dr. Angela Chiodo opined that Plaintiff's psychiatric problems were not "significant enough to interfere with [her] ability to function on a daily basis" and that Plaintiff had a good prognosis if she participated in and complied with mental health treatment.  (R. 24; 374-77.)  The ALJ also accepted Dr. Chiodo's opinion that Plaintiff has mild limitations in her ability to interact with others and found that the record supports a moderate limitation.  (R. 25, 379.)  Nonetheless, the ALJ rejected Dr. Chiodo's opinion that Plaintiff had no problems with memory, and determined that Plaintiff has a moderate limitation in her ability to understand, remember, or apply information based on neurological mental status examinations in December 2016 and June 2017.  (R. 24-25, 378.)  The ALJ also relied on the opinion of Dr. Shelley Ross, a state agency psychological consultant, who reviewed Plaintiff's medical records on January 12, 2016 and determined that Plaintiff "had moderate restriction of activities of daily living as well as moderate difficulties in maintaining concentration, persistence, or pace, and limitations in social function." (R. 25, 78.)  Dr. Ross also opined that Plaintiff "is capable of making simple work-related decisions and carrying out simple short instructions . . . [and] would not require special

supervision and . . . should be able to function in production-oriented jobs requiring little independent decision making." (R. 25, 81.)  The ALJ also accorded significant weight to the opinion of Dr. David Hutz, a state agency medical consultant, who reviewed Plaintiff's medical records on December 1, 2015. (R. 25, 80.) Dr. Hultz found that plaintiff could perform light work, with limitations on climbing and "concentrated exposure to extreme cold, wetness, noise, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards." (R. 25-26, 80, 84.)

We conclude that the ALJ relied on more than a mere scintilla of medical evidence in the record in his determination that the Reports and Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 22.)   Thus, we further conclude that the ALJ's decision was supported by substantial evidence in the record.  See Biestek, 139 S. Ct. at 1154 (stating that "the threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . is 'more a mere scintilla'" (quotation and citation omitted)).  As we discussed above, "[w]here the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently."  Hagans, 694 F.3d at 292 (quotation omitted).  Moreover, we "are not permitted to re-weigh the evidence or impose [our] own factual determinations."  Kushner, 765 F. App'x at 828 (alteration in original) (quotation omitted).  Thus, we overrule Plaintiff's objection to the Magistrate Judge's recommendation that the ALJ's evaluation of her symptoms was supported by substantial evidence.

B.      The Hypothetical Question to the Vocational Expert

Plaintiff objects to the Magistrate Judge's recommendation that the ALJ did not commit any error with respect to his question to the VE.  Plaintiff contends that the ALJ erred in relying on the VE's answer to his hypothetical question because the hypothetical omitted limitations to

Plaintiff's ability to maintain "attendance, persistence, and pace" that could be caused by her migraine pain and spinal impairments. (Pl.'s Objs. at 13.) Plaintiff also argues that the ALJ erred by ignoring the VE's responses to her representative's questions, which incorporated these limitations in "attendance, persistence and pace" due to migraines and limitations in the use of her hands due to her spinal impairments. (Id.) The United States Court of Appeals for the Third Circuit has explained that, "'[w]hile the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'" Burns v. Barnhart, 312 F.3d 113, 123 (3d Cir. 2002) (quoting Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984)). Thus, "[a] hypothetical question posed to a vocational expert 'must reflect *all* of a claimant's impairments.'" Id. (quoting Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987)). As a consequence, "[w]here there exists in the record medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." (Id. (citing Podedworny, 745 F.2d at 218).)

The ALJ found that Plaintiff's residual functional capacity is limited by her "degenerative disc disease of the cervical spine, obesity, migraines and anxiety." (R. 26.) He also noted that her "degenerative disc disease of the cervical spine resulted in mild lower extremity weakness and mildly decreased left sided grip strength" and that her obesity limits her ability to lift and carry. (R. 26.) The ALJ further found that the record does not support Plaintiff's testimony about her chronic migraines and debilitating pain and the limitations caused by these conditions. (R. 26.) In sum, he concluded that she "is capable of performing at the light exertional level" but that her nonexertional limitations compromise her ability to perform a full range of light work, and that

13

she has the residual functional capacity to perform light work with the following limitations:  no

detailed instructions and only occasional contact with the public.  (R. 21, 26-27.)  The ALJ

presented the following hypothetical to the VE based on these limitations:

> I would like you to consider hypothetically an individual of 47 years of age, with
> training, education, and experience as in the present case, who is able to lift 20
> pounds, stand and walk six hours throughout an eight-hour day, sit for six or more
> hours throughout an eight-hour day.  Non-exertional limitations:  no detailed
> instructions; limited to occasional contact with the public.  Given those facts and
> circumstances, is there any work the hypothetical individual could perform on a
> sustained basis, including past work of the claimant's?

(R 46.)  We find that the non-exertional limitations included in the hypothetical are supported by

the opinions of Dr. Chiodo and Dr. Ross, which were accepted by the ALJ.  (See R. 24-25, 78, 81,

378-79.)  We also find that the lack of exertional limitations is supported by the opinion of Dr.

Hultz, which was accepted by the ALJ.  (See R. 25-26, 80, 84.)  The VE concluded that there are

three jobs in the light category that a person with these limitations could perform:

cleaner/housekeeper, assembler of small products, and finish inspector.  (R. 46-47.)  The ALJ

determined, based on the VE's testimony, as well as Plaintiff's age, education, work experience,

and residual functional capacity, that there are jobs that exist in significant numbers in the national

economy that Plaintiff can perform.  (R. 27.)  The ALJ concluded that Plaintiff was not disabled

from August 18, 2015 through the date of the decision.  (Id.)

Plaintiff contends that the ALJ inaccurately omitted the limitations caused by her migraines

and spinal impairments from his questions to the VE.  Specifically, Plaintiff maintains that the ALJ

should have included the limitations used by her representative in his questions to the VE.  Those

limitations are:  (1) only "occasional ability to handle, finger, and feel bilaterally" and (2) being

"off-task from job production in excess of 15 percent of the workday" due to migraines.  (R. 48.)

However, we have already concluded that the ALJ's determination that Plaintiff's "statements

concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record" (R. 22), was supported by substantial evidence.  Furthermore, Plaintiff does not point to any support in her voluminous medical records for the inclusion of the limitations used by her representative in his questions to the VE.  Accordingly, we cannot conclude that the hypothetical question that the ALJ posed to the VE did not reflect all of Plaintiff's impairments for which there is "medically undisputed evidence" in the record.  Burns, 312 F.3d at 123 (citation omitted).  We thus overrule Plaintiff's objection to the Magistrate Judge's recommendation that the ALJ's hypothetical to the VE was legally sufficient and supported by substantial evidence

## IV.     CONCLUSION

For the foregoing reasons, we overrule Plaintiff's objections to Magistrate Judge Wells's R&R and approve and adopt the R&R in its entirety, including its ultimate recommendation that Plaintiff's request for review be denied.  As a result, we deny Plaintiff's Request for Review.  An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova

_____

John R. Padova, J.